# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

_____

| | |
|---|---|
| LINDA BEDELL, THE LINDA BEDELL INDIVIDUAL RETIREMENT ACCOUNT, LANDON BEDELL, KEATON BEDELL, and INNER DESIGN, INC. PROFIT SHARING PLAN, | : Civil Action No.: 2:20-cv-3804-WB : : **ECF CASE** : : **ORAL ARGUMENT REQUESTED** : |
| Plaintiffs, | : **(FILED FOR PRESERVATION** |
| v. | : **PURPOSES, MOTION TO COMPEL** : **ARBITRATION PENDING,** |
| GEORGE HECKLER, MARK S. CARROW, CASSATT SHORT TERM TRADING FUND LP, CV SPECIAL OPPORTUNITY FUND, LP, CITRIN COOPERMAN & COMPANY, LLP, TOPWATER INVESTMENT MANAGEMENT LLC, and GREEN MOUNTAIN FUND, LLC, | : **DKT. NO. 15)** : : : : : |
| Defendants. | : : |

_____

# DEFENDANT CITRIN COOPERMAN & COMPANY, LLP'S
## MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS
### (FILED FOR PRESERVATION PURPOSES ONLY, MOTION
### <u>TO COMPEL ARBITRATION PENDING)</u>

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................1

BACKGROUND ...............................................................................................................3

    A.    The Parties .............................................................................................3

    B.    Bedell's Investments with Heckler, Smith, and Carrow.........................3

    C.    Citrin Cooperman's Separate Tax Engagement Letter Contracts with Bedell .......6

    D.    Citrin Cooperman's Audit Engagement with Cassatt ............................7

    E.    Bedell's Claims Against Citrin Cooperman ..........................................8

ARGUMENT ....................................................................................................................9

    A.    The Claims Against Citrin Cooperman Are Time-Barred By the
            Contractual One-Year Limitations Period. ...........................................9

          1.    Plaintiffs Filed This Lawsuit Well Over One Year After the
                 Events that Purportedly Give Rise to Bedell's Claims Against
                 the Firm.....................................................................................10

          2.    The Contractual Limitations Period Is Not Subject to Tolling. ................12

    B.    The Aiding and Abetting Claims Against Citrin Cooperman Are Subject
            To Heightened Pleading Requirements That the Amended Complaint Fails
            to Satisfy...............................................................................................16

          1.    Plaintiffs Fail to Allege the Existence of an Underlying Fraud.................17

          2.    Plaintiffs Fail to Allege Citrin Cooperman Had Actual Knowledge
                 of or Substantially Assisted in Smith's, Heckler's, and Carrow's
                 Alleged Fraud............................................................................20

          3.    Plaintiffs Do Not Sufficiently Plead Citrin Cooperman Had Actual
                 Knowledge or Substantially Assisted in the Heckler and Smith's
                 Breaches of Fiduciary Duties.....................................................23

    C.    The Court Should Dismiss Plaintiffs' Breach of Fiduciary Duty Claim
            (Count IV) Because the Firm Did Not Owe a Fiduciary Duty To Plaintiffs
            and Because the Claim Is Duplicative. ................................................25

    D.    The Court Should Dismiss Plaintiffs' Negligent Misrepresentation Claim
            (Count VI) Because They Fail to Assert Reasonable Reliance and a
            Privity-Like Relationship with Citrin Cooperman................................27

CONCLUSION....................................................................................................................28

i

## **TABLE OF AUTHORITIES**

**Cases**                                                                                          **Page(s)**

*A. Servidone, Inc./B. Anthony Constr. Corp., J.V. v. State*,
    92 N.Y.S.3d 75 (N.Y. App. Div. 2019) ...............................................................................10

*Adams v. Deutsche Bank AG & Deutche Bank Sec., Inc.*,
    2012 WL 12884365 (S.D.N.Y. Sept. 24, 2012)...............................................................14

*In re Agape Litig.*,
    773 F. Supp. 2d 298 (E.D.N.Y. 2011) ..............................................................................16

*Aozora Bank, Ltd. v. Credit Suisse Grp.*,
    144 A.D.3d 437 (N.Y. App. Div. 2016) ......................................................................14, 15

*Aqua Pharms., LLC v. Park Irmat Drug Corp.*,
    2018 WL 2288287 (E.D. Pa. May 17, 2018) ....................................................................17

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)............................................................................................................9

*Baldeo v. Majeed*,
    150 A.D.3d 942 (N.Y. App. Div. 2017) ............................................................................25

*Baron v. Galasso*,
    83 A.D.3d 626 (N.Y. App. Div. 2011) .........................................................................16, 23

*Bd. of Trs. of IBEW Local 43 Elec. Contractors Health & Welfare, Annuity &
    Pension Funds v. D'Arcangelo & Co., LLP*,
    1 N.Y.S.3d 659 (N.Y. App. Div. 2015) .............................................................................26

*Brown v. Firstsource Advantage, LLC*,
    2019 WL 568935 (E.D. Pa. Feb. 12, 2019) ......................................................................10

*CIFG Assurance N. Am., Inc. v. Credit Suisse Sec. (USA) LLC*,
    128 A.D.3d 607 (N.Y. App. Div. 2015) ......................................................................14, 15

*CingleVue Int'l Pty, Ltd. v. eXo Platform NA, LLC*,
    2014 WL 3400856 (N.D.N.Y. July 10, 2014) ...................................................................11

*Corbett v. Firstline Sec., Inc.*,
    687 F. Supp. 2d 124 (E.D.N.Y. 2009) .........................................................................10, 11

*Corsello v. Verizon New York, Inc.*,
    967 N.E.2d 1177 (N.Y. 2012)............................................................................................13

*CRT Invs., Ltd. v. BDO Seidman, LLP*,
    85 A.D.3d 470 (N.Y. App. Div. 2011) .................................................................16, 22, 24

*DDRA Capital, Inc. v. KPMG, LLP*,
710 F. App'x 522 (3d Cir. 2017) ...........................................26

*DG Liquidation, Inc. v Anchin, Block & Anchin*,
300 A.D.2d 70 (N.Y. App. Div. 2002) ...........................................26

*Diana Jewelers of Liverpool, Inc. v. A.D.T. Co.*,
562 N.Y.S.2d 305 (N.Y. App. Div. 1990) ...........................................11

*Eurycleia Partners, LP v. Seward & Kissel, LLP*,
12 N.Y.3d 553 (N.Y. 2009) ...........................................17

*Fertitta v. Knoedler Gallery, LLC*,
2015 WL 374968 (S.D.N.Y. Jan. 29, 2015) ...........................................13

*Fowler v. UPMC Shadyside*,
578 F.3d 203 (3d Cir. 2009) ...........................................9

*Fox Paine & Co., LLC v Houston Cas. Co.*,
153 A.D.3d 678 (N.Y. App. Div. 2017) ...........................................16, 17

*Fox-Knapp, Inc. v. Emps. Mut. Cas. Co.*,
725 F. Supp. 706 (S.D.N.Y. 1989), *aff'd*, 893 F.2d 14 (2d Cir. 1989) ...........................................11

*Frankel v. Citicorp Ins. Servs., Inc.*,
913 N.Y.S.2d 254 (N.Y. App. Div. 2010) ...........................................11

*Frederico v. Home Depot*,
507 F.3d 188 (3d Cir. 2007) ...........................................17, 18, 19

*Friedman v. Anderson*,
23 A.D.3d 163 (N.Y. App. Div. 2005) ...........................................26

*In re Fyre Festival Litig.*,
399 F. Supp. 3d 203 (S.D.N.Y. 2019) ...........................................20

*Gomez–Jimenez v. New York Law Sch.*,
103 A.D.3d 13 (N.Y. App. Div. 2012) ...........................................27

*Kaufman v. Cohen*,
307 A.D.2d 113 (N.Y. App. Div. 2003) ...........................................16, 17, 23, 24

*Knockout Vending Worldwide, LLC v. Grodsky Caporrino & Kaufman CPA's, P.C.*,
2012 WL 3134215 (N.Y. Sup. Ct. July 11, 2012) ...........................................26

*Kozemko v. Griffith Oil Co.*,
682 N.Y.S.2d 503 (N.Y. App. Div. 1998) ...........................................11

*Krys v. Pigott*,
    749 F.3d 117 (2d Cir. 2014).................................................................23

*LaSalle Nat'l Bank v. Ernst & Young LLP*,
    285 A.D.2d 101 (N.Y. App. Div. 2001) ...............................................28

*Mandarin Trading Ltd. v. Wildenstein*,
    944 N.E.2d 1104 (N.Y. 2011)...............................................................27

*Maxcess, Inc. v. Lucent Techs., Inc.*,
    433 F.3d 1337 (11th Cir. 2005) ...........................................................11

*MBI Int'l Holdings Inc. v. Barclays Bank PLC*,
    151 A.D.3d 108 (N.Y. App. Div. 2017) ...............................................15

*Michael v. GLD Foremost Holdings, LLC*,
    240 F. Supp. 3d 326 (M.D. Pa. 2017)..................................................19

*Mitchell v. City of New York*,
    2018 WL 10049545 (S.D.N.Y. Apr. 9, 2018).......................................13

*MMS USA Holdings, Inc. v. PricewaterhouseCoopers LLP*,
    2013 WL 1154932 (N.Y. Sup. Ct. Mar. 19, 2013) ..............................26

*Par Fait Originals v. ADT Sec. Sys., Ne., Inc.*,
    586 N.Y.S.2d 2 (N.Y. App. Div. 1992) ................................................12

*Parrott v. Coopers & Lybrand, L.L.P.*,
    741 N.E.2d 506 (N.Y. 2000)................................................................27

*Regnante v. Sec. & Exch. Officials*,
    134 F. Supp. 3d 749 (S.D.N.Y. 2015)..................................................20

*Riachi v. Prometheus Grp.*,
    2020 WL 3867370 (3d Cir. July 9, 2020) ............................................18

*Ritchie v. Carvel Corp.*,
    180 A.D.2d 786 (N.Y. App. Div. 1992) ...............................................20

*Rochester v. Sixth Precinct Police Station*,
    370 F. App'x 244 (2d Cir. 2010) .........................................................13

*In re Rockefeller Ctr. Props., Inc. Sec. Litig.*,
    311 F.3d 198 (3d Cir. 2002).................................................................18

*Ryan v. Hunton & Williams*,
    2000 WL 1375265 (E.D.N.Y. Sept. 20, 2000) ....................................21

*S'holder Rep. Servs. LLC v. Sandoz Inc.*,
    2015 WL 1209358 (N.Y. Sup. Ct. Mar. 16, 2015) ...............................................................20

*Sec. Inv. Prot. Corp. v. BDO Seidman, L.L.P*,
    746 N.E.2d 1042 (N.Y. 2001) ...................................................................................27, 28

*Staffenberg v. Fairfield Pagma Assocs., L.P.*,
    944 N.Y.S.2d 568 (N.Y. App. Div. 2012) ...........................................................................26

*Stephenson v. PricewaterhouseCoopers, LLP*,
    768 F. Supp. 2d 562 (S.D.N.Y. 2011)...............................................................................21

*Stone v. Williams*,
    970 F.2d 1043 (2d Cir. 1992)...........................................................................................14

*Trippe Mfg. Co. v. Niles Audio Corp.*,
    401 F.3d 529 (3d Cir. 2005).............................................................................................10

*VTech Holdings, Ltd. v. PricewaterhouseCoopers, LLP*,
    348 F. Supp. 2d 255 (S.D.N.Y. 2004)...................................................................16, 17, 21

*Zavala v. Wal Mart Stores Inc.*,
    691 F.3d 527 (3d Cir. 2012).............................................................................................9

*Zumpano v. Quinn*,
    849 N.E.2d 926 (N.Y. 2006)............................................................................................13

## Other Authorities

Federal Rule of Civil Procedure 12(b)(6) ...........................................................................9

N.Y. CPLR § 201................................................................................................................10

Defendant Citrin Cooperman & Company, LLP ("Citrin Cooperman" or the "Firm") submits this Memorandum of Law in support of its Motion to Dismiss (the "Motion") for the purpose of preserving its rights under Federal Rule of Civil Procedure 12, and requests the Court refrain from considering the Motion and this Memorandum of Law until the Court rules on Citrin Cooperman's Motion to Compel Arbitration (the "Motion to Compel"), Dkt. No. 15. For the reasons set forth in the Motion to Compel, Citrin Cooperman believes that the Arbitration Panel, not this Court, should address and resolve this Motion.

## **INTRODUCTION**

Plaintiff Linda Bedell is a sophisticated investor who alleges owners and managers of various high-risk hedge funds that she invested in for decades orchestrated an elaborate fraud and misused her funds. While Bedell initially earned "steady, consistent returns," she claims to have eventually lost millions in her investments due to issues that arose at the funds in 2017 and the fraudulent activity of the fund managers. Citrin Cooperman was Bedell's tax preparer from 2011 through 2018. Besides issuing a single 2012 audit report for one of the relevant funds—years before issues arose at that fund—Citrin Cooperman did not audit or opine on the financial statements of any of the entities in which Bedell invested.

Despite Citrin Cooperman's limited role and lack of involvement (much less participation) in the operative facts, Bedell brings several claims against the Firm, each of which fails as a matter of law and should be dismissed.[1]

*First*, each of Bedell's causes of action is time-barred under the parties' contractually-agreed one-year limitations period. The limitations period explicitly governs all actions,

---

[1] Although this lawsuit purports to be brought by multiple plaintiffs, the Amended Complaint does not identify any claims against the Firm by anyone other than Linda Bedell. *See* Compl. ¶¶ 128–54.

1

regardless of form, "arising with respect to or relating to" services under the engagement letter contracts. Plaintiffs filed the Complaint well over one year after the last allegation against Citrin Cooperman and many years after the Firm ceased to be involved with the funds in which Bedell invested. On this basis alone, the Court should dismiss each of the claims against Citrin Cooperman.

*Alternatively*, the Amended Complaint fails to plead sufficient facts to support each of its causes of action against Citrin Cooperman.

Two of Bedell's counts against Citrin Cooperman assert that the Firm aided and abetted wrongs committed by others. Such counts must meet the heightened particularity standards of Rule 9. Count III, which asserts that Citrin Cooperman aided and abetted the alleged fraud orchestrated by other defendants, fails to plead precisely what underlying fraud Citrin Cooperman allegedly aiding and abetted, that Citrin Cooperman had "actual knowledge" of the (unspecified) fraud, or how the Firm "substantially assisted" in perpetrating a fraud. Similarly, Count IV, which asserts that Citrin Cooperman aided and abetted other defendants' breaches of fiduciary duty, fails because she cannot allege the Firm had actual knowledge and substantially assisted in the breach.

Count V, which asserts breach of fiduciary duty, fails because as a matter of law Citrin Cooperman did not owe Bedell (or any other Plaintiff) a fiduciary duty. The Firm was Bedell's tax preparer pursuant to engagement letter contracts, and it is well-settled that such relationships do not give rise to fiduciary duties as a matter of law.

Lastly, Count VI, Bedell's negligent misrepresentation claim against Citrin Cooperman, fails because Bedell has not alleged that the Firm made a representation on which she relied, much less that the Firm did so negligently. To the extent this claim stems from statements Citrin

Cooperman made in its single audit of the 2012 financial statements of one of the funds at issue in this dispute, the claim also fails because she and Citrin Cooperman had no privity-like relationship with respect to the audit.

## BACKGROUND

### A.    The Parties

Plaintiff Linda Bedell is a sophisticated investor who has invested millions of dollars in several high-risk, short-term trading funds since 2004. Dkt. 3, Amended Complaint ("Compl.") ¶¶ 20, 22–23, 32, 48. The funds Bedell claims she invested in include Defendants Cassatt Short Term Trading Fund, LP ("Cassatt"), CV Special Opportunity Fund, LP ("CV Opportunities"), Topwater Investment Management, LLC ("Topwater"), and Green Mountain Exclusive Fund, LLC ("Green Mountain"). Plaintiffs allege they were defrauded by Defendants George Heckler and Mark Carrow, who, along with an individual named Brenda Smith, supposedly misled Bedell with respect to funds they managed. Plaintiffs seek $35 million in damages.

Citrin Cooperman is a public accounting and advisory firm headquartered in New York, New York. *Id.* ¶ 8. Citrin Cooperman provided tax services to Bedell for the tax years 2011 through 2018, pursuant to a series of separate, annual engagement letter contracts. *Id.* ¶¶ 8, 37. In addition, Citrin Cooperman briefly served as the independent auditor of Cassatt, a fund in which Bedell invested in 2010, and for which Citrin Cooperman issued a single audit report in connection with Cassatt's year-end 2012 financial statements. *Id.* ¶¶ 41, 43.

### B.    Bedell's Investments with Heckler, Smith, and Carrow

Bedell's investments with the other defendants began many years before she formed a relationship with Citrin Cooperman. *See* Compl. ¶¶ 22–23, 37. Bedell was introduced to Heckler in 2002, through an investor in Conestoga Partners Holdings, LP ("Conestoga"), a fund that Carrow had formed years earlier and for which Heckler managed investment activities. *See id.*

¶¶ 15–18. In 2004, Bedell invested $750,000 in Conestoga as a "trial" investment through which she could "gauge Conestoga's performance and security before making any considerable investment[s] . . . ." *Id.* ¶ 20. Bedell's capital account balance—and with it, her confidence in Heckler, Smith, and Carrow—grew over time. *Id.* ¶¶ 21, 24. Between 2004 and 2010, Bedell made a series of additional investments in Conestoga, Topwater, and Green Mountain, allegedly based on Heckler's and Carrow's recommendations. *Id.* ¶¶ 22–23. At the time Bedell began investing with Heckler and Carrow, none of Bedell, Smith, Heckler and Carrow had any affiliation with Citrin Cooperman and Citrin Cooperman had no connection to any of the investments Heckler, Smith, and Carrow managed. *See id.* ¶¶ 20–21, 24–32.

Conestoga's growth apparently stalled in 2010, leading Bedell to transfer the bulk of her investments to Cassatt and CV Opportunities, which were also managed by Heckler, Smith, and Carrow. *Id.* ¶¶ 25–28, 31–32. Plaintiffs allege that Heckler and Smith made several representations to Bedell regarding Cassatt and CV Opportunities, including that (i) "Cassatt was a 'safe' investment with 'very high levels of liquidity and very high levels of transparency,'" (ii) Cassatt's investment strategy "allowed traders to buy and sell stocks on a priority basis ahead of other traders," (iii) Heckler "would lead the traders in both Cassatt and CV Opportunities as he was 'meticulous' and would ensure that [Bedell] was 'cared for in the future,'" and (iv) in order to facilitate the transfer of her investments in Topwater and Green Mountain, Bedell would need to execute a limited power of attorney naming Heckler and Smith as her attorney-in-fact. *Id.* ¶¶ 26–30. Cassatt's offering documents, made clear that "investment in [Cassatt] is speculative, involves a high degree of risk, and is suitable only for persons who can bear the economic risk of

the loss of their investment[s] . . . ." Ex. 9 at 20.[2] The offering documents further disclosed that "[n]o assurances can be made that the Partnership will be able or willing to liquidate investments sufficient to satisfy any or all Funds Withdrawal Requests[,] [and] [t]hus, Limited Partners may not be able to liquidate their investment[s]." Ex. 9 at 13, 25.

Bedell continued to invest in Cassatt, CV Opportunities, Green Mountain, and Topwater over the next several years. Compl. ¶¶ 48–52. Even though Plaintiffs allege that Heckler, Smith, and Carrow, "in his capacity as Ms. Bedell's tax advisor at Citrin Cooperman," facilitated Bedell's additional investments in Cassatt and CV Opportunities, *id.* ¶ 49, Citrin Cooperman had no relationship with Heckler, Smith, or Bedell, at the time Bedell initially invested in these funds. Carrow joined Citrin Cooperman in 2010, when Carrow and other partners of Carrow, Doyle & Associates were admitted as partners of Citrin Cooperman. *Id.* ¶¶ 17, 35. And, as discussed below, Bedell first formed any relationship with Citrin Cooperman at the end of 2011, when she retained the Firm to provide tax services. Plaintiffs do not allege any conduct by Citrin Cooperman in connection with Bedell's decision to transfer her investments from Conestoga, Topwater, and Green Mountain into Cassatt and CV Opportunities. *See id.* ¶¶ 24–34.

Heckler and Smith provided Bedell with "Master Position Summary Sheets" reflecting growth in her investments between 2014 and 2018, and Plaintiffs allege "Mr. Heckler, Ms. Smith, and Mr. Carrow consistently reassured Ms. Bedell that her investments were earning 'steady' and 'consistent' returns year after year." *Id.* ¶¶ 53–54. Bedell first tried to redeem her investments in early 2018 and received some money by the middle of the year, but Heckler allegedly stalled the process and did not provide Bedell all of the redemptions she requested. *Id.*

---

[2] All exhibits cited herein are attached to the Declaration of Bruce R. Braun in Support of Citrin Cooperman's Motion to Dismiss.

¶¶ 62–65. The Amended Complaint describes a year-long series of communications between June 2018 through mid-2019 involving Bedell, Heckler, and Heckler's lawyer regarding Bedell's efforts to recoup her investment. *See id.* ¶¶ 66–99. Through these discussions, Bedell learned of another lawsuit filed against Heckler and Cassatt by "Innovative Funds," which Bedell alleges "highlight the breadth of Mr. Heckler's misrepresentations to Ms. Bedell for years," including with respect to redemptions by Cassatt investors. *Id.* ¶¶ 86–90.

Plaintiffs allege that Heckler attempted to avoid giving Bedell her redemptions because "there were significant issues with Cassatt and CV Opportunities as early as the Spring or Summer 2017 that had been concealed from the limited partners, including Ms. Bedell." *Id.* ¶ 57. Plaintiffs claim that, at some unspecified time thereafter, Heckler and Carrow developed a plan whereby certain limited partners, which did not include Bedell, were to be paid before other limited partners. *Id.* ¶¶ 58–61. None of the allegations regarding Bedell's alleged efforts to recoup her investment from Heckler alleges any involvement by Citrin Cooperman or any misrepresentations by Carrow. *See id.* ¶¶ 66–99.

## C.     Citrin Cooperman's Separate Tax Engagement Letter Contracts with Bedell

Bedell's relationship with Citrin Cooperman began at the end of 2011, when she engaged the Firm to prepare her income tax returns. *Id.* ¶ 37; Ex. 1, 2011 Engagement Letter Contract. Bedell engaged Citrin Cooperman for every tax year thereafter through 2018, each time pursuant to a separate annual engagement contract. *See* Exs. 2–8, 2012–2018 Engagement Letter Contracts. With the exception of the 2011 Engagement Letter Contract, each agreement sets forth a one-year limitations period for either party to bring a claim:

> Any and all claims by you arising with respect to or relating to this engagement must be commenced within one (1) year following the date on which [Citrin Cooperman] delivered the tax return(s) associated with this engagement. If the tax return(s) are not delivered to you, for any reason, any and all claims by you arising

under this engagement must be commenced within one (1) year of the date you are
informed of the engagement's termination.

*E.g.*, Ex. 2 at 4.

The engagement letter contracts further provide that, absent a separate engagement letter,

any additional services Citrin Cooperman provided to Bedell for the tax year would be governed

by the existing contract. *See, e.g.*, *id.* at 2 ("If this occurs, we may issue a separate engagement

letter to confirm the scope and related terms of the additional services. In the absence of any

other written communication from us, our services for the 2012 tax year will be governed by the

terms of this engagement letter.").

Plaintiffs allege that, pursuant to these engagements, Bedell worked extensively with

Carrow and another individual, Matt Lakofsky, both of whom joined Citrin Cooperman in 2010.

Compl. ¶¶ 37, 46. Bedell's final engagement letter contract with Citrin Cooperman is dated

January 25, 2019 and pertains to the 2018 tax year. *See* Ex. 8.

### D.    Citrin Cooperman's Audit Engagement with Cassatt

Separate from its engagement with Bedell, Citrin Cooperman was engaged by Cassatt to

conduct an audit of the fund's December 31, 2012 year-end financial statements. Compl. ¶ 41.

The Firm's engagement letter contract with Cassatt provides for a similar one-year contractual

limitations period for asserting claims "arising with respect to or relating to" the engagement.

*See* Ex. 10 at 4. As part of its audit procedures, the Citrin Cooperman engagement team that

performed the Cassatt audit communicated with Bedell to confirm her contributions and

withdrawals during the year ended December 31, 2012. Compl. ¶ 42; Ex. 10.

On May 17, 2013, more than seven years prior to the commencement of this lawsuit,

Citrin Cooperman issued an audit report with respect to Cassatt's 2012 financial statements.

Compl. ¶¶ 43–44. Citrin Cooperman is not alleged to have audited any of the other funds'

financial statements, and it did not issue audit reports related to Cassatt for any other year.[3] Indeed, Plaintiffs admit Citrin Cooperman had no access to confidential information about fund trading strategies. *Id*. ¶ 111(h).

**E.     Bedell's Claims Against Citrin Cooperman**

The Amended Complaint asserts four causes of action against Citrin Cooperman. Two of those concern aiding and abetting misconduct by others. Citrin Cooperman is alleged to have aided and abetted a fraud committed by Smith, Heckler, and Carrow (Count III). And Citrin Cooperman is alleged to have aided and abetted a breach of fiduciary duty by Smith and Heckler (Count IV). In addition, Citrin Cooperman allegedly breached a fiduciary duty it owed Bedell (Count V). And the Firm also allegedly engaged in negligent misrepresentation (Count VI).

These claims are asserted despite the fact that the body of the Amended Complaint never alleges that Citrin Cooperman had any involvement with Bedell, Heckler, Smith, Carrow, or any of the funds at issue at the time Bedell made her initial investments in Conestoga, Topwater, and Green Mountain, *see* Compl. ¶¶ 18–34, or that Citrin Cooperman was involved in Bedell's decision to transfer her investments to Cassatt and CV Opportunities. In addition, the Amended Complaint makes clear that Smith and Heckler, not Citrin Cooperman, introduced Bedell to Cassatt and CV Opportunities, allegedly gave Bedell assurances regarding those funds, and facilitated the transition of Bedell's assets to those funds. *Id.* ¶¶ 25–30. Furthermore, Plaintiffs admit that the "significant issues" with the funds that purportedly led to her losses did not arise until "Spring or Summer 2017" at the earliest, *id*. ¶ 57, years after Citrin Cooperman's last—and only—audit of the Cassatt fund in which Bedell invested. Unsurprisingly, the Amended

---

[3] In the various counts at the end of the Amended Complaint, Plaintiffs refer to a 2016 Audit Report for Cassatt. *See* Compl. ¶¶ 132, 151. These appear to be typos intended to refer to the 2012 Audit Report. There was no 2016 Audit Report.

Complaint alleges no conduct by Citrin Cooperman when those purported issues arose. In fact, the entire period that Plaintiffs assert that Bedell was prevented from withdrawing assets, there is no specific conduct alleged against Citrin Cooperman other than that a Firm partner sent Bedell draft Schedule K-1s for 2017 that "Mr. Heckler had provided from Daniel Island Accounting Solutions, LLC in Charleston, South Carolina." *Id.* ¶ 70; *see generally id.* ¶¶ 62–99.

## ARGUMENT

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Amended Complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare" recitations of the elements of a claim supported only by "conclusory statements" are insufficient. *Id.* at 678, 683. Plaintiffs' allegations must rise above mere speculation. *Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 542 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 545). If the Court can infer only the mere possibility of misconduct, the Amended Complaint must be dismissed because it has alleged, but has failed to show, that the pleader is entitled to relief. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) (quotation omitted).

**A.      The Claims Against Citrin Cooperman Are Time-Barred By the Contractual One-Year Limitations Period.**

Bedell and Citrin Cooperman agreed to seven separate annual engagement letter contracts, each containing a one-year limitations period. Plaintiffs bring this action well over a year after the latest factual allegation having anything to do with Citrin Cooperman, and many years after the alleged events that purportedly form the basis for Bedell's claims against the Firm. Furthermore, Plaintiffs have not alleged any basis for tolling the contractual limitations period; nor could they—the Amended Complaint admits Bedell was on notice of the facts that

give rise to her claims over a year before Plaintiffs filed this lawsuit. Accordingly, Bedell's

claims against Citrin Cooperman are time-barred should be dismissed in their entirety.

    1.    <u>Plaintiffs Filed This Lawsuit Well Over One Year After the Events that</u>
<u>Purportedly Give Rise to Bedell's Claims Against the Firm.</u>

Each of the seven engagement letter contracts that Citrin Cooperman and Bedell entered

into from 2013 through 2019 contains a one-year limitations period for all disputes relating in

any way to Bedell's engagements with Citrin Cooperman. The language of the limitations period

is clear and broad:

> *Any and all* claims by you arising *with respect to or relating to* this engagement
> must be commenced within one (1) year following the date on which [Citrin
> Cooperman] delivered the tax return(s) associated with this engagement. If the tax
> return(s) are not delivered to you, for any reason, any and all claims by you arising
> under this engagement must be commenced within one (1) year of the date you are
> informed of the engagement's termination.

Ex. 2 at 4, 2012 Engagement Letter Contract (emphasis added).[4]

Courts generally enforce the language of an agreement as written when the contract

language is unambiguous, since it clearly demonstrates the parties' intent. *See A. Servidone,*

*Inc./B. Anthony Constr. Corp., J.V. v. State*, 92 N.Y.S.3d 75, 78 (N.Y. App. Div. 2019) (citations

omitted). New York law permits contractual parties to shorten the limitations period for claims

arising out of an engagement. *See* N.Y. CPLR § 201; *Corbett v. Firstline Sec., Inc*., 687 F. Supp.

2d 124, 128 (E.D.N.Y. 2009).[5] "New York courts also enforce contract provisions shortening the

---

[4] The 2018 Engagement Letter Contract is materially identical to the other engagements between
Bedell and Citrin Cooperman regarding the one-year limitations provision, except that it requires
claimants to file a written request for mediation. Ex. 8 at 4.

[5] The engagement letter contracts between Bedell and Citrin Cooperman contain a choice-of-law
provision stating that "any dispute relating in any way to this engagement will be governed by
the laws of the State of New York . . . ." *E.g.*, Ex. 2 at 5. Accordingly, New York law applies to
Bedell's claims against Citrin Cooperman. *See e.g.*, *Trippe Mfg. Co. v. Niles Audio Corp.*, 401
F.3d 529, 532 (3d Cir. 2005) (applying New York law pursuant to the choice of law provision in
the agreement); *Brown v. Firstsource Advantage, LLC,* 2019 WL 568935, at *3 n.1 (E.D. Pa.

limitations period for bringing any claim against a party, including claims that sound in tort." *See Corbett*, 687 F. Supp. 2d at 128. Courts have consistently held that one-year contractual limitations periods are reasonable and enforceable. *See, e.g.*, *Diana Jewelers of Liverpool, Inc. v. A.D.T. Co.*, 562 N.Y.S.2d 305, 305 (N.Y. App. Div. 1990); *Fox-Knapp, Inc. v. Emps. Mut. Cas. Co.*, 725 F. Supp. 706, 710 (S.D.N.Y. 1989), *aff'd*, 893 F.2d 14 (2d Cir. 1989).

Each of Bedell's four causes of action against Citrin Cooperman is subject to the one-year limitations provision. Plaintiffs allege Citrin Cooperman's role as Bedell's "accountant and tax advisor" repeatedly throughout the Amended Complaint and, of note, specifically in each count against Citrin Cooperman. *See* Compl. ¶¶ 8, 36–37, 49, 132, 138, 148, 151. That they are cast as tort claims does not change the fact that each cause of action "relate[s] to" or is "with respect to" Citrin Cooperman's engagements with Bedell for tax services. *Corbett*, 687 F. Supp. 2d at 128 (enforcing contract provisions shortening limitations period "for bringing *any* claim against a party, including claims [sounding] in tort"); *Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1342–43 (11th Cir. 2005) (stating that, under New York law, a contractual limitations period of "any action or proceeding" not limited to contractual or tort claims applies to "any action or proceeding" including fraud claims); *Kozemko v. Griffith Oil Co.*, 682 N.Y.S.2d 503, 504–05 (N.Y. App. Div. 1998) (upholding a shorter limitations period provided by parties' contract because plaintiffs "failed to demonstrate any fraud, duress or misrepresentation regarding the agreement to shorten the period of limitations"); *see also CingleVue Int'l Pty, Ltd.*

---

Feb. 12, 2019) (applying the choice of law provision in the agreement since Pennsylvania courts "generally honor the intent of the contracting parties and enforce choice of law provisions in contracts executed by them . . . ." (citation omitted).) "New York courts will generally enforce a clear and unambiguous choice-of-law clause contained in an agreement so as to give effect to the parties' intent." *Frankel v. Citicorp Ins. Servs., Inc.*, 913 N.Y.S.2d 254, 259 (N.Y. App. Div. 2010) (citations omitted).

*v. eXo Platform NA, LLC*, 2014 WL 3400856, at *3 (N.D.N.Y. July 10, 2014); *Par Fait Originals v. ADT Sec. Sys., Ne., Inc.*, 586 N.Y.S.2d 2, 2–3 (N.Y. App. Div. 1992). Accordingly, the claims against Citrin Cooperman fall within the broad language of the one-year limitations periods set forth in the engagement letter contracts.

There is no doubt that Plaintiffs commenced this lawsuit outside the contractually agreed limitations period. Plaintiffs filed this suit in August 2020, long after Bedell's relationship with Citrin Cooperman ended and several years after the last of the allegations against Firm. Nearly all of the allegations against Citrin Cooperman date back to 2012 and 2013, while the Firm served as Bedell's tax preparer, *see* Compl. ¶¶ 8, 37, 41, and several of the allegations relate to Citrin Cooperman's 2012 audit of the financial statements of Cassatt, *id.* ¶¶ 42–45.[6] The latest allegation having anything to do with Citrin Cooperman is from the fall of 2018, where Plaintiffs allege that a Citrin Cooperman partner transmitted draft copies of Schedule K-1s for the calendar year ending 2017 that Heckler had provided from another accounting firm. *Id.* ¶ 70. Underscoring how far outside the limitations period all of the claims fall, Plaintiffs do not allege any misconduct by the Firm related to the draft Schedule K-1s or any services Citrin Cooperman provided to Bedell pursuant to her final engagement letter contract for the 2018 tax year.

   2. <u>The Contractual Limitations Period Is Not Subject to Tolling</u>.

The Amended Complaint also makes clear that there is no basis for tolling of any of Bedell's claims against Citrin Cooperman. And even if tolling were to apply, it would not change the outcome here. Plaintiffs admit Bedell knew of the alleged misconduct surrounding Heckler

---

[6] As stated previously, the references toward the end of the Amended Complaint to a 2016 Audit Report for Cassatt, *see* Compl. ¶¶ 132, 151, appear to be typos intended to refer to the 2012 Audit Report. The only report the Firm issued was for the year ended December 31, 2012.

and the Funds as early as February 2019 and by July 2019 at the latest—in either case, over one year before Plaintiffs filed the Complaint. *Id.* ¶¶ 86, 109.

Equitable tolling is available only "under compelling circumstances." *Rochester v. Sixth Precinct Police Station*, 370 F. App'x 244, 245 (2d Cir. 2010) (citation omitted); *Mitchell v. City of New York*, 2018 WL 10049545, at *2 (S.D.N.Y. Apr. 9, 2018). The doctrine of equitable tolling requires specific allegations the defendant "fraudulently conceal[ed] from a plaintiff the fact that the plaintiff has a cause of action, or when the plaintiff is induced by the defendant to forego a lawsuit until the statute of limitations has expired." *Rochester*, 370 F. App'x at 245 (citing *Pearl v. City of Long Beach*, 296 F.3d 76, 82–83 (2d Cir. 2002)); *Fertitta v. Knoedler Gallery, LLC*, 2015 WL 374968, at *8 (S.D.N.Y. Jan. 29, 2015) (applying New York's equitable tolling doctrine claims arose under New York law). Moreover, the plaintiff must allege that the subsequent and specific actions taken by the defendant were separate from those that provide the factual basis for the underlying cause of action, and that these subsequent actions kept the plaintiff from timely bringing suit. *Corsello v. Verizon New York, Inc.*, 967 N.E.2d 1177, 1184 (N.Y. 2012) (citing *Zumpano v. Quinn*, 849 N.E.2d 926, 929 (N.Y. 2006)).

Here, Plaintiffs have not alleged that Citrin Cooperman fraudulently concealed facts that would have allowed them to discover the factual basis for their claims. Plaintiffs also do not allege any subsequent conduct by Citrin Cooperman that altered Bedell's "awareness of the essential facts and circumstances underlying [her] causes of action or [her] ability to timely bring [her] claims." *Zumpano*, 849 N.E.2d at 929. In fact, with the exception of Plaintiffs' allegation that Citrin Cooperman sent Bedell draft copies of Schedule K-1s in the fall of 2018, Compl. ¶ 70, the Amended Complaint alleges nothing regarding Citrin Cooperman pertaining to the time

period during which Plaintiffs claim the funds began experiencing issues. *Id.* ¶ 57. Accordingly, Bedell is not entitled to equitable tolling.

Furthermore, Bedell's claims would be time-barred even if they had once been subject to tolling. Parties "cannot rely on the doctrine of fraudulent concealment . . . to toll the limitation period beyond the point in time at which they had inquiry notice of the fraud." *Adams v. Deutsche Bank AG & Deutche Bank Sec., Inc.*, 2012 WL 12884365, at *6 (S.D.N.Y. Sept. 24, 2012) (dismissing claims alleging aiding and abetting fraud, breach of fiduciary duty, and aiding and abetting breach of fiduciary duty as untimely); *see also Stone v. Williams*, 970 F.2d 1043, 1048–49 (2d Cir. 1992) (holding that the statute of limitations begins to run when the plaintiff is put on inquiry that a potential claim exists). Inquiry notice is satisfied where, as here, another lawsuit filed against a defendant alleges similar fraudulent conduct. *Aozora Bank, Ltd. v. Credit Suisse Grp.*, 144 A.D.3d 437, 439 (N.Y. App. Div. 2016) (finding a complaint filed in separate action that alleged similar misconduct to the claims in the current action as sufficient for inquiry notice); *see also CIFG Assurance N. Am., Inc. v. Credit Suisse Sec. (USA) LLC*, 128 A.D.3d 607, 608 (N.Y. App. Div. 2015).

Plaintiffs affirmatively allege that another lawsuit put them on notice of the misconduct underlying Bedell's claims. Plaintiffs admit Bedell learned of the Innovative lawsuit by early 2019, nearly 18 months before filing this lawsuit. Specifically, Plaintiffs allege that Bedell exchanged emails with Heckler's counsel in the weeks following February 22, 2019 regarding the Innovative lawsuit. Compl. ¶¶ 84–86. While Plaintiffs attach only the amended complaint from that lawsuit, the original complaint alleging fraud against Heckler and Cassatt was publicly filed on February 26, 2019, consistent with the timing of Bedell's discussions with Heckler's counsel. *See* Ex. 11, Innovative Complaint. By Plaintiffs' own admission, Bedell was on notice

14

regarding the fraud claims against Heckler and Cassatt by February 2019 at the earliest and by July 2019 at the latest.[7] *See* Compl. ¶¶ 86, 109. The Innovative Complaint alleges in detail Heckler's and Cassatt's purported fraud against certain investors. Specifically, the Innovative plaintiffs alleged over a year ago, as Plaintiffs do now, that Heckler made false representations regarding the "first-loss" trading strategy, failed to invest the fund's capital for agreed-upon purposes, and used investor capital to benefit himself and others. Compl. Ex. F ¶ 25. The Innovative Complaint further alleges that "Heckler admitted that he had, in fact, misappropriated the Fund's capital in order to pay redemptions to Cassatt Fund investors." *Id*. at Ex. F ¶ 78. The Innovative Complaint even alleges that "Heckler offered to pledge his own, personal assets as collateral to secure the obligations of the Contracting Defendants," *id*. at Ex. F ¶¶ 61, 92, which mirrors Plaintiffs' allegation, *see* Compl. ¶ 66.

These allegations against Heckler and Cassatt provided sufficient notice to require Bedell to inquire into the alleged fraud. *See MBI Int'l Holdings Inc. v. Barclays Bank PLC*, 151 A.D.3d 108, 110, 114–15 (N.Y. App. Div. 2017) (allegations in complaint demonstrated that plaintiff had sufficient information, including from previously filed lawsuit against defendant that was public knowledge, to place plaintiff on inquiry notice); *Aozora Bank*, 144 A.D.3d at 438 (If a plaintiff "shuts his eyes to the facts which call for investigation, knowledge of the fraud will be imputed to him" (citation omitted)); *see also CIFG Assurance N. Am*, 128 A.D.3d at 608 ("[P]laintiff was put on notice of defendant's alleged fraudulent activities by other lawsuits commenced prior to November 2011. Because plaintiff possessed information suggesting the probability that it had been defrauded, and failed to conduct an inquiry at that time, knowledge of

---

[7] In any event, the amended complaint in the Innovative lawsuit, which Plaintiffs attach to their Amended Complaint, was filed in July 2019, still over one year before Plaintiffs filed this action.

the fraud is imputed."). Because Plaintiffs bring this lawsuit more than a year after first learning of the Innovative Complaint, any claims against Citrin Cooperman are time-barred under the one-year contractual limitations period even if Plaintiffs had a basis for equitable tolling, which they do not.

Accordingly, on this basis alone, all the counts of the Amended Complaint against Citrin Cooperman (Counts III through VI) should be dismissed. The remainder of the arguments provide additional, alternative bases for dismissing each of the claims against Citrin Cooperman.

**B.      The Aiding and Abetting Claims Against Citrin Cooperman Are Subject To Heightened Pleading Requirements That the Amended Complaint Fails to Satisfy.**

To state a claim for aiding and abetting under New York law, a plaintiff "must allege that the defendant had actual knowledge of the wrongful conduct committed, not simply that the defendant should have known of the conduct." *In re Agape Litig.*, 773 F. Supp. 2d 298, 308 (E.D.N.Y. 2011) (citation omitted). Allegations that indicate only constructive knowledge, such as the defendant knew or "should have known" are insufficient. *Id.* at 311–12; *VTech Holdings, Ltd. v. PricewaterhouseCoopers, LLP*, 348 F. Supp. 2d 255, 269 (S.D.N.Y. 2004); *Baron v. Galasso*, 83 A.D.3d 626, 629 (N.Y. App. Div. 2011). Facts showing actual knowledge "must . . . be alleged with particularity." *In re Agape Litig.*, 773 F. Supp. 2d at 326.

In addition, a claim of aiding and abetting requires "substantial assistance." Substantial assistance requires an affirmative act on the defendant's part. *Fox Paine & Co., LLC v Houston Cas. Co.*, 153 A.D.3d 678, 679 (N.Y. App. Div. 2017) (quoting *Baron*, 83 A.D.3d at 629)). An aider and abettor substantially assists a wrongdoer when it "affirmatively assists, helps conceal or fails to act when required to do so, thereby enabling the breach to occur." *Kaufman v. Cohen*, 307 A.D.2d 113, 126 (N.Y. App. Div. 2003). Substantial assistance "means more than just performing routine business services for the alleged fraudster." *CRT Invs., Ltd. v. BDO Seidman,*

*LLP*, 85 A.D.3d 470, 472 (N.Y. App. Div. 2011) "[T]he mere inaction of an alleged aider and abettor constitutes substantial assistance only if the defendant owes a fiduciary duty directly to the plaintiff." *Kaufman*, 307 A.D.2d at 126.

Each of Bedell's two aiding and abetting claims fail to satisfy these pleading standards. With respect to aiding and abetting fraud, the Amended Complaint fails to plead with the required particularity the existence of an underlying fraud and fails satisfy the elements of actual knowledge and substantial assistance. Plaintiffs also have not plead actual knowledge or substantial assistance with respect to the aiding and abetting a breach of fiduciary duty claim against the Firm.

1.    Plaintiffs Fail to Allege the Existence of an Underlying Fraud.

As a threshold matter, Bedell cannot sustain a claim for aiding and abetting fraud without first adequately alleging the existence of an underlying fraud. *Fox Paine & Co.*, 153 A.D.3d at 679. In order to bring a claim for fraud, Bedell must allege: (1) a material misrepresentation or omission of fact; (2) made by defendant with knowledge of its falsity; (3) an intent to defraud; (4) reasonable reliance on the part of the plaintiff; and (5) resulting damage to the plaintiff. *Eurycleia Partners, LP v. Seward & Kissel, LLP*, 12 N.Y.3d 553, 559 (N.Y. 2009). This cause of action is subject to the heightened pleading requirements of Rule 9(b), and therefore each element must be pled with particularity. *See Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007); *VTech Holdings*, 348 F. Supp. 2d at 272 (quotations omitted); *see also Aqua Pharms., LLC v. Park Irmat Drug Corp.*, 2018 WL 2288287, at *4 (E.D. Pa. May 17, 2018). "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake" in order to "place the defendant[s] on notice of the 'precise misconduct with which [it is] charged.'" Fed. R. Civ. P. 9(b); *Frederico*, 507 F.3d at 200 (second alteration in original) (quoting *Lum v. Bank of Am.*, 361 F.3d 217, 223–24 (3d Cir. 2004)). "Rule 9(b)

17

requires, at a minimum, that plaintiffs support their allegations of . . . fraud with all of the

essential factual background that would accompany 'the first paragraph of any newspaper

story'—that is, the 'who, what, when, where and how' of the events at issue." *In re Rockefeller*

*Ctr. Props., Inc. Sec. Litig*., 311 F.3d 198, 217 (3d Cir. 2002) (citations omitted).

The Amended Complaint fails to allege a fraud with particularity as required under Rule

9(b). Bedell claims that Hecker and Carrow materially misrepresented: (a) Conestoga's, CV

Opportunities', and Cassatt's trading strategies; (b) that these strategies had historically led to

consistent profitable returns; (c) that Carrow was not directly involved in Cassatt and CV

Opportunities and that these funds were "overseen by" Citrin Cooperman; and (d) that Bedell's

prior investments were secure and growing each month. Compl. ¶ 121. The Amended Complaint

does not, however, specify what the defendants said, when these alleged misrepresentations were

made, how they were made, and why they were not only inaccurate but also fraudulent.

Taking one of myriad examples, Plaintiffs do not identify who made representations to

Bedell regarding the funds' trading strategies, when, or in what way those representations were

knowingly false. The same is true regarding the funds' historical performance—apparently,

Heckler and Carrow at some point said the funds had historically been profitable, *id.* ¶¶ 114, 121,

but the Amended Complaint leaves to anyone's guess when those representations were made,

what was said, and whether the funds were in fact not profitable historically at the time those

statements were made. Without more, Bedell's vague claims, and the factual allegations that

purport to build toward them, fall far short of meeting the heightened pleading standard because

they do not "plead or allege the date, time and place of the alleged fraud or otherwise inject

precision or some measure of substantiation into" the alleged fraud. *Frederico*, 507 F.3d at 200;

*see, e.g.*, *Riachi v. Prometheus Grp.*, 2020 WL 3867370, at *2–3 (3d Cir. July 9, 2020)

(affirming dismissal where plaintiff "only vaguely alleged[d] who made the[] representations and when they were made" over a seven-year period, holding that "Rule 9(b) is not satisfied where a plaintiff . . . merely lumps the who, what, when, and where together"); *Michael v. GLD Foremost Holdings, LLC*, 240 F. Supp. 3d 326, 334 (M.D. Pa. 2017) (dismissing fraud claim where complaint lacked "particularized allegations as to the timing, context, and content of any statements purportedly made by Defendants" and failed to "indicate 'how' and/or 'why' any given statement or act alleged in the complaint amount[ed] to a materially false representation of fact").

Stepping back from the specifics does not make it any easier to discern Plaintiffs' theory. While the Amended Complaint makes clear that Bedell lost money investing with the other defendants, it fails utterly to state with particularity what the fraud is—whether it was the inducement to invest in the Funds in the first instance, Compl. ¶ 124, not being prioritized, *id*. ¶¶ 60–61, Heckler's alleged stalling of submitting her redemption requests, ¶ 62, or otherwise. Instead, the Amended Complaint speaks in generalities that do not offer any clarity in the form of particularized allegations that could put Citrin Cooperman on notice as to what "massive fraud," *id*. ¶ 129, it aided and abetted. *See Frederico*, 507 F.3d at 200.

Compounding the confusion, Plaintiffs attribute several statements and key actions, including fund management and the preparation of account statements to Brenda Smith, who, despite being a critical player in Bedell's recitation of events, is conspicuously not a defendant in this case. Other conduct is attributed to groups of individuals that include non-defendant Smith or to the "Defendants" collectively. *See* Compl. ¶¶ 23, 25–30, 35–36, 49–54, 110. This leaves unclear which allegations are being made against which defendant—if any. *See, e.g.*, *id.* ¶ 110 (alleging "Defendants" knew statements related to Conestoga and Green Mountain were false,

notwithstanding that the Amended Complaint makes clear Citrin Cooperman had no relationship to Green Mountain and was not involved when Bedell invested in Conestoga).[8] "Rule 9(b) requires that when fraud is alleged against multiple defendants, a plaintiff must set forth separately the acts complained of by each defendant." *Regnante v. Sec. & Exch. Officials*, 134 F. Supp. 3d 749, 771 (S.D.N.Y. 2015) (citations omitted) (granting motion to dismiss for failing to particularize each defendant's role in the underlying fraud and misrepresentation claims); *see, e.g.*, *In re Fyre Festival Litig.*, 399 F. Supp. 3d 203, 213–19 (S.D.N.Y. 2019) (dismissing fraud claim because plaintiffs did not allege when statements were made and certain statements were not attributable to some defendants, among other deficiencies); *see also Ritchie v. Carvel Corp.*, 180 A.D.2d 786, 787 (N.Y. App. Div. 1992); *S'holder Rep. Servs. LLC v. Sandoz Inc*., 2015 WL 1209358, at *8 (N.Y. Sup. Ct. Mar. 16, 2015).

Because Plaintiffs' bare allegations fail to particularly plead the who, what, when, where, and how of the alleged underlying fraud at issue, they cannot assert an aiding and abetting fraud claim against Citrin Cooperman.

    2.    <u>Plaintiffs Fail to Allege Citrin Cooperman Had Actual Knowledge of or Substantially Assisted in Smith's, Heckler's, and Carrow's Alleged Fraud</u>.

In addition, Plaintiffs have not adequately pled that Citrin Cooperman had "actual knowledge" of the (inadequately pled) fraud, which they must to state a valid claim for aiding and abetting fraud. According to Plaintiffs, the Firm knew, "based on its independent review of Cassatt's underlying financial records . . . and Mr. Carrow's personal knowledge and access to

---

[8] In lieu of specificity, Plaintiffs offer a blanket allegation that "[m]ost, if not all, electronic mail communications concerning the formation of Cassatt and CV Opportunities copied Ms. Smith, Mr. Carrow, and Mr. Heckler." Compl. ¶ 26 n.2. This attempt to waive away Rule 9(b)'s heightened pleading requirement is problematic and should be rejected for several reasons, including because the Amended Complaint does not even identify which statements were conveyed over email.

information," that Cassatt was not following the investment objectives, strategies, and methods represented to Bedell, among other things. Compl. ¶ 131. Plaintiffs further allege that Citrin Cooperman "recklessly disregarded numerous red flags . . . and engaged in acts and omissions constituting a gross departure from professional standards of care for an independent administrator." *Id.* ¶ 134.

These allegations fail to satisfy the actual knowledge requirement under the heightened pleading standard. To the contrary, they make clear that Bedell is in fact proceeding under a theory of constructive knowledge, which is insufficient as a matter of law to state a claim for aiding and abetting fraud. *See VTech Holdings*, 348 F. Supp. 2d at 269, 272. (dismissing aiding and abetting fraud claim where allegation of actual knowledge was based on defendant's "unlimited access to the books and records" and other company documents); *see also Stephenson v. PricewaterhouseCoopers, LLP*, 768 F. Supp. 2d 562, 575–76 (S.D.N.Y. 2011) (allegation that defendant had unfettered access to fraudster's information insufficient to satisfy actual knowledge, finding that access does not demonstrate the defendant, in fact, encountered the red flags); *Ryan v. Hunton & Williams*, 2000 WL 1375265, at *8–9 (E.D.N.Y. Sept. 20, 2000) (allegation that bank was aware of "red flags" suggesting that its client was using accounts for fraudulent activities insufficient to satisfy requirement of actual knowledge).

In fact, the Amended Complaint alleges facts that affirmatively undermine any assertion that Citrin Cooperman had actual knowledge of a widespread fraud involving the funds. Plaintiffs admit that "Citrin Cooperman did not have access to confidential information concerning the Funds' investments and trading strategies" and that the alleged issues with the funds did not begin until "Spring or Summer 2017," years after the Firm's last audit report. Compl. ¶¶ 41, 43, 57, 111(h). Plaintiffs have all but pleaded that Citrin Cooperman knew *nothing*

about the funds at the times relevant to their claims, and certainly never plead specific facts that the Firm had "actual knowledge" of any supposed fraud.

The Amended Complaint also fails to allege that anything Carrow knew constitutes actual knowledge by the Firm of a fraud by others. In Count III, Plaintiffs allege that Carrow had "personal knowledge and access to information" about Cassatt. *Id.* ¶ 131. This and Bedell's other claims regarding Carrow's actual knowledge of the underlying fraud are, again, lacking in specificity since they do not explain when Carrow knew of the alleged fraudulent activities and span a time period far longer than Citrin Cooperman's association with Smith, Heckler, and even Carrow. *See id.* ¶ 111. Therefore, it is impossible to determine, based on the Amended Complaint, which facts allegedly known to Carrow Bedell seeks to attribute to Citrin Cooperman, much less how knowledge of such facts amounts to actual knowledge of fraud.

Separately, Plaintiffs also fail to allege Citrin Cooperman "substantially assisted" a fraud. According to Plaintiffs, Citrin Cooperman:

> [K]nowingly provided substantial assistance and encouragement to Mr. Heckler and Ms. Smith in effecting the fraud by, inter alia: (i) issuing a clean audit report for Cassatt that it knew was materially false and misleading for the year ending December 31, 2016;[9] and (ii) purporting to act as Ms. Bedell's personal accountant and tax advisor, which included providing various services and assurances to Ms. Bedell which purported to confirm that her investments were secure and under appropriate management.

*Id.* ¶ 132.

This allegation simply points to the Firm's routine business of issuing an audit report or acting as Bedell's tax accountant. Such allegations do not amount to "substantial assistance" of a fraud. *See CRT Invs.*, 85 A.D.3d at 472 (holding that substantial assistance was lacking where

---

[9] Again, the reference to a 2016 Audit Report for Cassatt appear to be typos intended to refer to the 2012 Audit Report. There was no 2016 Audit Report.

defendant merely performed "the routine business of auditing" a fund in which plaintiffs invested, and that plaintiffs' receipt of audited financial statements and defendant's knowledge that investors would rely on them is insufficient to "establish the requisite linking conduct"). Plaintiffs do not plead with particularity how Citrin Cooperman's issuance of an audit report for a fund's 2012 financial statements and tax advice to Bedell were affirmative acts that amount to substantially assisting the fraud. Nor does the chronology of events allow them to do so—again, Citrin Cooperman had no involvement with the funds when Bedell alleges that the issues began to occur, Compl. ¶ 57, and Plaintiffs allege nothing about Citrin Cooperman regarding the time Bedell claims that problems with the funds arose.

Accordingly, Count III must be dismissed because Plaintiffs have failed to allege with particularity that a fraud was committed, that Citrin Cooperman had "actual knowledge" of the fraud, or that Citrin Cooperman "substantially assisted" the fraud.

3.    <u>Plaintiffs Do Not Sufficiently Plead Citrin Cooperman Had Actual Knowledge or Substantially Assisted in the Heckler and Smith's Breaches of Fiduciary Duties</u>.

Plaintiffs' aiding and abetting breach of fiduciary duty claim fails for similar reasons. In order to plead an aiding and abetting breach of fiduciary duty claim under New York law, the plaintiff must allege: (1) a breach by a fiduciary of obligations to another; (2) that the defendant knowingly induced or participated in the breach; and (3) that plaintiff suffered damages as a result of the breach. *Kaufman*, 307 A.D.2d at 125. Where, as here, a claim of aiding and abetting a breach of fiduciary duty involves an alleged fraud, the complaint must allege the circumstances that constitute fraud with particularity. *Krys v. Pigott*, 749 F.3d 117, 129 (2d Cir. 2014). In addition, "an allegation that the defendant 'knew or should have known' about the breach of [fiduciary] duty" does not constitute actual knowledge. *Baron*, 83 A.D.3d at 629 (citation omitted). The plaintiff must allege facts demonstrating that the defendant "affirmatively

assist[ed], help[ed] conceal[ed] or fail[ed] to act when required to do so, thereby enabling the breach to occur." *Kaufman*, 307 A.D.2d at 126. Mere inaction will not give rise to a claim for aiding and abetting unless "the defendant owes a fiduciary duty directly to the plaintiff." *Id*.

The Amended Complaint alleges Bedell relied on and entrusted her investments to Heckler and Smith, and that Heckler and Smith, among other things "had discretion and control giving rise to a fiduciary duty and duty of care to Ms. Bedell." Compl. ¶¶ 144–46. Plaintiffs further allege that Heckler and Smith breached their fiduciary duties to Bedell by, "*inter alia*, operating a Ponzi scheme from 2006 through 2019," and that Citrin Cooperman "knowingly provided substantial assistance and encouragement" by "*inter alia*, purporting to provide accounting services [to] the Funds and vouching for the Funds' performance." *Id.* ¶¶ 147–48.

Plaintiffs' allegation that Citrin Cooperman provided accounting services and "vouch[ed]" for the Funds' performance is insufficient to demonstrate knowing inducement or affirmative assistance. In fact, the allegations in the Amended Complaint are so lacking in specificity that it is impossible to determine the basis for Bedell's claim against the Firm. Plaintiffs do not allege when Citrin Cooperman purportedly "vouch[ed] for" the Funds. Presumably, they are simply mischaracterizing the Firm's audit report; however, again, the issuance of a single audit report years before issues arose at the funds does not amount to substantial assistance. *See CRT Invs.*, 85 A.D.3d at 472. Nor do Plaintiffs allege that Citrin Cooperman even knew Smith and Heckler were misusing their funds, much less when they were doing so how or how the Firm participated. Accordingly, Plaintiffs have failed to allege that Citrin Cooperman "affirmatively assist[ed], help[ed] conceal[ed] or fail[ed] to act when required to do so, thereby enabling the breach to occur." *Kaufman*, 307 A.D.2d at 126 (plaintiffs' allegation that defendant "knowingly induced, aided and abetted" another's breach of fiduciary

duty by assisting him in acquiring an interest in a property and "to conceal the same from plaintiffs" was not unusual activity and did not constitute substantial assistance).

In addition, Plaintiffs fail to sufficiently allege that information known to Carrow can be attributed to the Firm as actual knowledge of a breach of fiduciary. The Amended Complaint alleges that "Mr. Carrow, in his role as Ms. Bedell's personal accountant and tax advisor, assured Ms. Bedell that her investments were secure and under appropriate management," and that "Mr. Carrow touted Citrin Cooperman's expertise related to the Funds based on his prior involvement as General Partner." Compl. ¶ 148. This is insufficient to plead the Firm had actual knowledge of a breach of fiduciary duty because it is, again, entirely lacking in specificity. Plaintiffs do not allege what in particular Carrow knew regarding a breach by Heckler or Smith, when he knew of a breach, or why his general assurances about the Funds' performance demonstrate actual knowledge of a breach that can be attributed to the Firm for the purpose of alleging an aiding and abetting claim.

Because Plaintiffs fail to plead actual knowledge of or substantial assistance in the alleged breaches of fiduciary duties, Count V must be dismissed.

**C.     The Court Should Dismiss Plaintiffs' Breach of Fiduciary Duty Claim (Count IV) Because the Firm Did Not Owe a Fiduciary Duty To Plaintiffs and Because the Claim Is Duplicative.**

To state a claim for a breach of fiduciary duty, a plaintiff must prove: (1) the existence of a fiduciary duty, (2) the defendant breached that fiduciary duty, and (3) the plaintiff was damaged directly by the breach. *E.g.*, *Baldeo v. Majeed*, 150 A.D.3d 942, 945–96 (N.Y. App. Div. 2017). Citrin Cooperman's relationship with Bedell was nothing more than a conventional business relationship between client and accountant for tax preparation and related services. Compl. ¶¶ 8, 36–37, 46, 49, 132, 138, 148, 151.

25

It is well settled that there is no fiduciary relationship between accountant and client. *DG Liquidation, Inc. v Anchin, Block & Anchin*, 300 A.D.2d 70, 70–71 (N.Y. App. Div. 2002); *see also MMS USA Holdings, Inc. v. PricewaterhouseCoopers LLP*, 2013 WL 1154932, at *8 (N.Y. Sup. Ct. Mar. 19, 2013) ("PWC asserts that MMS fails to allege that MMS had anything other than an ordinary accountant/client relationship. Such a relationship is not a fiduciary relationship. The fact that PWC had expertise that MMS did not have does not convert the relationship to that of a fiduciary."); *Knockout Vending Worldwide, LLC v. Grodsky Caporrino & Kaufman CPA's, P.C.*, 2012 WL 3134215, at *1 (N.Y. Sup. Ct. July 11, 2012) (dismissing the plaintiffs' breach of fiduciary duty claim where the complaint alleged that the defendants were the plaintiffs' personal accountants, consultants, and advisors whose opinions they placed confidence in, because that is nothing more than a conventional business relationship between accountant and client); *see also Friedman v. Anderson*, 23 A.D.3d 163, 166 (N.Y. App. Div. 2005). The fact that such relationships incidentally involve the provision of financial advice does not give rise to a fiduciary duty. *See DDRA Capital, Inc. v. KPMG, LLP*, 710 F. App'x 522, 533–34 (3d Cir. 2017); *see, e.g., Friedman*, 23 A.D.3d at 166 ("While providing financial advice may be within the scope of an accountant's duties, and so within the definition of a conventional business relationship, the standard that plaintiff must meet to sustain a cause of action for breach of fiduciary duty has not been met."); *Staffenberg v. Fairfield Pagma Assocs., L.P.*, 944 N.Y.S.2d 568, 570 (N.Y. App. Div. 2012) (finding that accounting firm was not a fiduciary and, thus, no breach of fiduciary duties occurred even though the plaintiff intermittently sought investment advice from the accounting firm); *Grodsky*, 2012 WL 3134215, at *1.

Furthermore, Bedell's breach of fiduciary duty claim should be dismissed as duplicative of her negligent misrepresentation claim (Count VI). *See, e.g., Bd. of Trs. of IBEW Local 43*

*Elec. Contractors Health & Welfare, Annuity & Pension Funds v. D'Arcangelo & Co., LLP*, 1 N.Y.S.3d 659, 661–62 (N.Y. App. Div. 2015) (dismissing breach of fiduciary claim and fraud claim as duplicative since it alleged same wrongdoing as professional malpractice claim and did not seek different damages). Bedell is alleging the same misconduct against Citrin Cooperman regarding general assurances made by Citrin Cooperman partners, *see* Compl. ¶¶ 139, 151, and she makes the same damages allegation, *see id*. ¶¶ 141, 154.

**D.   The Court Should Dismiss Plaintiffs' Negligent Misrepresentation Claim (Count VI) Because They Fail to Assert Reasonable Reliance and a Privity-Like Relationship with Citrin Cooperman.**

To state a claim for negligent misrepresentation, a plaintiff must allege "(1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information." *Mandarin Trading Ltd. v. Wildenstein*, 944 N.E.2d 1104, 1109 (N.Y. 2011) (quotation omitted). A "special relationship" may be established by showing a fiduciary relationship, *see Gomez–Jimenez v. New York Law Sch*., 103 A.D.3d 13, 18–19 (N.Y. App. Div. 2012), or "a clearly defined set of circumstances which bespeak a close relationship premised on knowing reliance." *Parrott v. Coopers & Lybrand, L.L.P.*, 741 N.E.2d 506, 508 (N.Y. 2000); *see also Sec. Inv. Prot. Corp. v. BDO Seidman, L.L.P*, 746 N.E.2d 1042, 1048 (N.Y. 2001).

Plaintiffs first allege that "Citrin Cooperman employees, including Mr. Carrow, made oral and written representations to Ms. Bedell as her personal accountant and tax advisor" that contained "material misstatements of fact." Compl. ¶ 151. However, Plaintiffs do not identify any statements that provide the basis for Bedell's claim,[10] nor do they plead factual allegations

---

[10] Bedell claims Citrin Cooperman sent her draft copies of Schedule K-1s in 2018 that were provided by Heckler and appear to have originated at another accounting firm, but she does not

explaining why the Firm's statements were not only false, but also negligently made. Furthermore, Plaintiffs' allegations regarding Citrin Cooperman's 2012 Audit Report for Cassatt cannot form the basis of a negligent misrepresentation claim against the Firm because there is no privity-like relationship between Bedell and the Firm related to the Cassatt audit. *See Sec. Inv. Prot. Corp.*, 746 N.E.2d at 1048 (Because BDO's audits were not prepared for the "specific benefit" of plaintiff or sent to plaintiff, "there was no 'linking conduct' that put SIPC and BDO in a relationship approaching privity."); *LaSalle Nat'l Bank v. Ernst & Young LLP*, 285 A.D.2d 101, 107 (N.Y. App. Div. 2001) (to show a privity-like relationship, "Plaintiffs must plead some affirmative conduct by Ernst & Young linking it to plaintiffs' alleged reliance, other than the performance of the audit itself.").

## CONCLUSION

For the reasons set forth above, Citrin Cooperman asks that the Court dismiss Counts III–VI of the Amended Complaint.

---

allege that the Firm passed these materials along negligently or that she reasonably relied on the draft document to her detriment. *See* Compl. ¶ 70.

Dated:  October 2, 2020

Respectfully submitted,

 /s/ Joseph C. Crawford

Joseph C. Crawford (Pa. ID No. 30844)
Alexander J. Egerváry (Pa. ID No. 326473)
HANGLEY ARONCHICK SEGAL PUDLIN &
SCHILLER
One Logan Square, 27th Floor
Philadelphia, PA 19103

Bruce R. Braun
Karim Basaria
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, Illinois 60603

*Attorneys for Defendant Citrin Cooperman &
Company, LLP*