IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LINDA BEDELL, et al., | : |
| | : |
| Plaintiffs, | : Civil Action No.: 2:20-cv-3804-WB |
| | : |
| v. | : ECF CASE |
| | : |
| GEORGE HECKLER, et al., | : ORAL ARGUMENT REQUESTED |
| | : |
| Defendants. | : |

**DEFENDANT MARK S. CARROW'S MEMORANDUM OF LAW
IN SUPPORT OF HIS MOTION TO DISMISS THE FRAUD CLAIM
<u>ASSERTED AGAINST HIM IN COUNT II OF THE AMENDED COMPLAINT</u>**

Defendant Mark S. Carrow ("Defendant Carrow" or "Mr. Carrow"), by his attorneys, hereby submits this Memorandum of Law in support of his Motion to Dismiss the single claim Plaintiff Linda Bedell ("Plaintiff Bedell," "Plaintiff," or "Ms. Bedell")[1] has asserted against him in Count II of the Amended Complaint. Although Count II purports to allege a claim of fraud against Defendant Carrow, the Amended Complaint does not plead sufficient facts to state a claim of relief that is plausible on its face as required under Federal Rule of Civil Procedure 12(b)(6). (*See infra* Section II.) Moreover, Plaintiff's pleading contains none of the factual particularity required under Rule 9(b) – the "who, what, when, where and how" of Carrow's

---

[1] Multiple named plaintiffs – Linda Bedell, The Linda Bedell Individual Retirement Account, Landon Bedell, Keaton Bedell, and Inner Design, Inc. Profit Sharing Plan – purport to bring this action against Defendant Carrow, but Linda Bedell is the only plaintiff who has asserted a claim against him in the Amended Complaint. (*See* Dkt. 3, Am. Compl. ¶¶ 119-127 (Count II).)

alleged fraud. (*See id.*) Having failed to meet these essential pleading standards, Plaintiff's claim against Defendant Carrow should be dismissed.

I.   **PLAINTIFF'S ALLEGATIONS**[2]

   **A. Plaintiff's Core Allegations Focus On The Allegedly Unlawful Conduct Committed By Defendant Heckler And Nondefendant Smith, Not On Any Specific Statement Made By Defendant Carrow**

Plaintiff Bedell alleges that, beginning in 2004, she invested millions of dollars on behalf of herself and her family in a group of private hedge funds, including Conestoga Partners Holdings, LP ("Conestoga"), Defendant Topwater Investment Management, LLC ("Topwater"), Defendant Green Mountain Exclusive Fund, LLC ("Green Mountain"), Defendant Cassatt Short Term Trading Fund, LP ("Cassatt"), Defendant CV Special Opportunity Fund, LP ("CV Opportunities"). (Dkt. No. 3, Am. Compl. ("Compl.") at p. 1-2 & ¶¶ 9-12, 22-34.) Although the Amended Complaint names multiple defendants in this action, Plaintiff's core allegations focus on the allegedly unlawful conduct of Defendant George Heckler ("Defendant Heckler" or "Mr. Heckler") who controlled Conestoga, Cassatt, and CV Opportunities and their investment activities. (*See, e.g., id.* at 1 & ¶¶ 16, 24-34, 49-56, 62-69, 98-99.)[3] Plaintiff's averments also emphasize the allegedly illegal activity of nondefendant Brenda Smith, who administered the funds, formed Cassatt and CV Opportunities with Mr. Heckler, and served as the broker-dealer

---

[2] Solely for purposes of this motion, Plaintiff's factual allegations (but not her legal conclusions or bald assertions) are accepted as true. (*See infra* Section II.A.1.)

[3] In addition to George Heckler, the Amended Complaint names as defendants Mr. Carrow, Citrin Cooperman & Company, LLP. ("Citrin"), the accounting firm Mr. Carrow had joined by January 2010, and four of the five funds in which Plaintiff invested. The Conestoga fund, which is not a named defendant, was liquidated in or about 2010.

for these two funds. (*See, e.g.*, *id*. at 1-2 & ¶¶ 24-34, 49-56.)[4] Plaintiff claims, *inter alia*, that, beginning in early 2018, she attempted to redeem her investments in these two funds, but Defendant Heckler refused all of her requests (¶¶ 62-99). The sum and substance of Ms. Bedell's Amended Complaint is that "despite repeated promises **by Mr. Heckler** that their money was safe and secure, it is now apparent that Plaintiffs' entire investment was stolen and/or dissipated." (*Id*. at p. 2 (emphasis added).)

> B. **Plaintiff Alleges That She Was Pleased With The Performance Of Her Investments In Conestoga During The Time Period Carrow Was Involved In That Fund And That Her Investments In The Funds She Subsequently Sought To Redeem Were Made Based On Recommendations By Defendant Heckler And Nondefendant Smith, Not By Defendant Carrow**

Notably, *none* of the alleged illegal conduct by Mr. Heckler and Ms. Smith pertained to Ms. Bedell's investments in Conestoga, the *only* fund in which Defendant Carrow allegedly played an active role at the time of Plaintiff's investments. To the contrary, the Amended Complaint alleges that, from the time of her initial investment in Conestoga in 2004 to at least January 2010, Plaintiff Bedell was pleased with the performance of her substantial investments in that fund, and her "trust and confidence in Mr. Heckler, Ms. Smith, and Mr. Carrow grew, as did her capital account balance." (Compl. ¶ 21.) As Ms. Bedell concedes, she "received numerous reports and account statements showing both the fund's liquidity and steady growth in her investments" (*id*.), and "she was earning steady, consistent returns and had been receiving funds within thirty days of her redemption requests (¶ 24).

---

[4] In October 2020, Defendant Heckler stipulated "to his liability in full" on the three counts Plaintiff has charged against him, Counts I (violation of the Pennsylvania Securities Act), II (fraud), and VII (breach of contract). (*See* Dkt. No. 18, Stipulation of Liability of Defendant George Heckler.) Earlier, in August 2019, the Federal Bureau of Investigation allegedly arrested and charged Ms. Smith with "four counts of wire fraud and one count of securities fraud in connection with another hedge fund she owned and operated." (¶ 103.)

In 2010, the year when Conestoga's growth allegedly "stalled" (¶ 25), Plaintiff invested in Green Mountain via Topwater . . . based on Mr. Heckler's recommendation" (¶ 23) and, based upon the recommendations of both Mr. Heckler and Ms. Smith, transferred all of her remaining assets (including all of the Conestoga assets owned by her and other named plaintiffs, her IRA, the Keaton Bedell Trust and the Landon Bell Trust) into Cassatt and CV Opportunities, the funds Heckler and Smith had formed and managed (Compl. at p. 8 (heading) & ¶¶ 25-34). Thus, by no later than the end of 2010, Plaintiff Bedell held **no** investments in Conestoga, the **only** fund at issue in which Defendant Carrow played an active role at the time of her investment in the fund. (¶¶ 15-16, 35.)

Moreover, by her own admission, Ms. Bedell invested in the other funds – Green Mountain, Topwater, Cassatt, and CV Opportunities – based **solely** upon the recommendations of Mr. Heckler and/or Ms. Smith. (Compl. at p. 8 (heading) & ¶¶ 23, 25-34.) She does not allege that she made these investments based upon any recommendation made by Defendant Carrow. Indeed, although at Cassatt's founding, Mr. Carrow served as a member of Cassatt Fund Partners, LLC, Cassatt's managing member,[5] he withdrew from all direct involvement with Cassatt in or about January 2010 – **before** Plaintiff began investing in that fund. (¶¶ 7, 35.) And Ms. Bedell does not (for she cannot) aver that Mr. Carrow ever served as a managing member of CV Opportunities. (*See generally* Compl.)[6] Even Plaintiff's conclusory assertions regarding Mr.

---

[5] The Amended Complaint incorrectly states that Mr. Carrow served as "the managing member" of Cassatt. (*See* Compl. ¶ 7.)

[6] In its briefs in support of its motion to dismiss, Defendant Citrin mistakenly cites the Amended Complaint as averring that Mr. Carrow was a founder of CV Opportunities (*see* Dkt. No. 25, Citrin's Reply Br. at 4) and that he served as one of its managers (*see* Dkt. No. 16-3, Citrin's Opening Br. at 4), but Plaintiff makes no such allegations.

Carrow's alleged contact with Ms. Smith after he withdrew from Cassatt and Citrin subsequently became Plaintiff's personal accountant and tax advisor (*see* ¶¶ 35-40, 46-47) do not allege that Mr. Carrow provided any investment recommendations to Ms. Bedell regarding these funds.[7] Furthermore, even accepting as true for purposes of his motion the averments about Defendant Carrow's alleged assurances that Ms. Bedell's investments in Cassatt and CV Opportunities were "secure" (¶¶ 46-47), Plaintiff does not aver ***when*** or ***where*** or ***how*** Mr. Carrow allegedly made these statements; nor does she plead any facts showing that such statements were not true when made or that Mr. Carrow did not reasonably believe that they were true at the time he allegedly made them. Indeed, Ms. Bedell has conceded that the alleged "significant issues with Cassatt and CV Opportunities" did not arise until the Spring of 2017, at the earliest (¶ 57; Dkt. No. 22, Pl.'s Opp. Br. to Citrin Mot.), seven years after Mr. Carrow had withdrawn from Cassatt. Nowhere in the Amended Complaint does Plaintiff aver any facts suggesting that Mr. Carrow said her investments were secure at or near the time these alleged issues arose.

### C. Count II Of The Amended Complaint Does Not Differentiate Defendant Carrow's Alleged Misrepresentations From Those Made By Mr. Heckler

Count II of the Amended Complaint avers that ***both*** Defendant Heckler and Defendant Carrow made the following alleged material misrepresentations:

---

[7] Notwithstanding these explicit factual allegations, Plaintiff disregards her own pleading in her brief in opposition to Defendant Citrin's motion to dismiss, baldly asserting that, after he had withdrawn from Cassatt, "Mr. Carrow advised Plaintiffs to invest in several hedge funds that he owned/or controlled" (Dkt. No. 22, Pl.'s Opp. Br. to Citrin Mot. at 1), and mischaracterizing the funds Defendant Carrow had nothing to do with as "Mr. Carrow's funds" (*id.*). Plaintiff cites to paragraphs 25-28 as supporting these assertions when those allegations actually refer only to alleged conduct by Defendant Heckler and nondefendant Smith. (Dkt. No. 22, Pl.'s Opp. Br. to Citrin Mot. at 4.) She also falsely asserts that "Mr. Carrow redeemed Citrin's preferred clients" (*id.*) when, according to her own allegations, Messrs. Carrow and Heckler did no more than discuss the possible redemption of investments made by several Cassatt and CV Opportunities limited partners (Compl. ¶¶ 57-61); she does allege whether or to what extent any such redemption actually occurred (*see id.*).

>  (i) Conestoga utilized a "first loss" trading strategy that provided monthly liquidity to its investors; (ii) CV Opportunities invested in undervalued and discounted assets; (iii) Cassatt utilized a very short term trading strategies with a concentration in equity securities; (iv) by using these strategies, Conestoga, Cassatt, and CV Opportunities historically had consistent profitable returns; (v) Mr. Carrow was not directly involved in Cassatt and CV Opportunities; (vi) Cassatt and CV Opportunities were overseen at all times by a third-party independent auditor, Citrin Cooperman, who had access to confidential information concerning the Funds' investments and trading strategies;[8] and (vii) that Ms. Bedell's prior investments were secure and growing each month.

(Compl. ¶ 121.) The first six of these seven alleged misstatements reiterate verbatim the statements Plaintiff claims in Count I that Defendant Heckler made in alleged violation of the Pennsylvania Securities Act (¶ 114). Thus, it is obvious that in this count, Plaintiff merely added Mr. Carrow's name to these same allegations, lumping the two defendants together without making any distinction between them. Further demonstrating the slapdash nature of this pleading, Plaintiff inserted Ms. Smith's name in two paragraphs of this count (*see* ¶¶ 124-125) even though she is not a named defendant. This lack of precision extends also to the inclusion of allegations regarding Ms. Bedell's investments in Conestoga which, at least during the time period when Defendant Carrow was involved in that fund, she found to be "winners" (¶ 24).

## II.    ARGUMENT

### A. Applicable Pleading Standards

#### 1. Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Thus, factual allegations that fail "to raise a right to relief above the speculative

---

[8] As revealed in its reply brief in support of its motion to dismiss, Citrin performed one audit for Cassatt for one year only, 2011, and never performed an audit for CV Opportunities. (*See generally* Dkt. No. 25, Citrin's Reply Br. & Exh. 1 thereto.)

6

level" or merely state a "conceivable" claim will not suffice.  *Id*. at 555, 570.  And though a court must accept as true a complaint's well-pleaded factual allegations and draw all reasonable inferences therefrom in the light most favorable to the plaintiff, *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996), it need not give credence to "bald assertions" or "legal conclusions," *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429 (3d Cir. 1997), or "sweeping legal conclusions in the form of factual allegations," *Morse v. Lower Merion School Dist.*, 132 F.3d 902, 906 n.8 (3d Cir. 1997).  In short, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  As explained below, Plaintiff's allegations against Defendant Carrow fail "to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 544, 555, and, therefore, she has not met Rule 12(b)(6)'s pleading requirements with respect to Count II as against Mr. Carrow.

    **2. Rule 9(b)**

Because her claim against Mr. Carrow in Count II of the Amended Complaint sounds in fraud, Plaintiff must also satisfy Rule 9(b)'s stringent standard for pleading fraud which requires that she "state ***with particularity*** the circumstances constituting fraud . . . ." Fed. R. Civ. P. 9(b) (emphasis added).  "To satisfy this heightened pleading requirement, a complaint must provide 'all of the essential factual background that would accompany the first paragraph of any newspaper story – that is the who, what, when, where and how of the events at issue.'"  *Crockett v. Luitpold Pharms., Inc.*, No. 19-276, 2020 U.S. Dist. LEXIS 13549, at *6-7 (E.D. Pa. Jan. 28, 2020) (Beetlestone, J.) (quoting *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002); granting defendants' motion to dismiss, *inter alia*, plaintiff's fraud claim for failure to plead the

7

"'who, what, when, where and how' of Defendants' alleged fraud"). Accordingly, courts must dismiss complaints that fail to "plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (affirming dismissal of plaintiff's common law fraud claim for failure to plead the circumstances of the alleged fraud with sufficient particularity). A plaintiff cannot circumvent this requirement by "merely lump[ing] the who, what, when, and where together" with respect to multiple defendants. *Riachi v. Prometheus Grp.*, No. 19-2768, 822 Fed. Appx. 138, 142 (3d Cir. 2020) (affirming dismissal of fraud claims for failure to satisfy heightened pleading requirements of Rule 9(b)).

As discussed below, Plaintiff's fraud claim against Defendant Carrow (Count II) should be dismissed for this reason as well.

### B. The Amended Complaint Fails To Satisfy The Pleading Standards For Alleging A Fraud Claim Against Defendant Carrow

To plead a claim of common law fraud under Pennsylvania law, a plaintiff must allege "(1) misrepresentation of a material fact; (2) scienter; (3) intention by the declarant to induce action; (4) justifiable reliance by the party defrauded upon the misrepresentation; and (5) damage to the party defrauded as a proximate result." *Crockett*, 2020 U.S. Dist. LEXIS 13549, at *32-33 (quoting *Colaizzi v. Beck*, 895 A.2d 36, 39 (Pa. Super. 2006)).[9] Here, Plaintiff Bedell purports to

---

[9] As this Court recognized in *Crockett*, "[f]ederal courts sitting in diversity must apply the substantive law of the forum state." 2020 U.S. Dist. LEXIS 13549, at *7 n.4 (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)). But even if the Court were to apply the substantive law of Plaintiff's alleged residency, Colorado, the elements of common law fraud are substantially the same. *See, e.g., Western State Bank v. Cosey, L.L.C.*, No. 19-01155, 2019 U.S. Dist. LEXIS 190874, at *8-11 (D.C. Colo. Nov. 4, 2019) (delineating elements of fraud under Colorado law; granting defendant's motion to dismiss, *inter alia*, plaintiff's fraud claim for failure to meet Rule 9(b)'s heightened pleading requirements).

aver these elements by lumping together her fraud claim against Defendant Carrow with her fraud claim against Defendant Heckler under the heading "Count II." (*See* Compl. ¶¶ 120-127.) "Such sweeping, undifferentiated allegations do not satisfy Rule 9(b)," however. *Dolan v. PHL Variable Ins. Co.*, No. 3:15-01987, 2016 U.S. Dist. LEXIS 161414, at *15 (M.D. Pa. Nov. 22, 2016). "As numerous courts have held, 'Rule 9(b) does not allow a complaint to merely lump multiple defendants together but 'require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.'" *Id.* at *15-16 (citing cases).

Because Plaintiff impermissibly "lump[s] the who, what, when, and where together" with respect to Defendants Heckler and Carrow, *Riachi*, 822 Fed. Appx. at 142, she does not "allege the date, time and place" for *when* or *where* or *how* each of the two defendants allegedly made each statement or "otherwise inject precision or some measure of substantiation into [her] fraud allegation" as required under Rule 9(b). *Frederico*, 507 F.3d at 200. Instead, Plaintiff makes no distinction between the alleged statements made by Mr. Carrow and those made by Mr. Heckler in violation of Rule 9(b)'s particularity requirements. (*See* Compl. ¶ 121.) Nor does she aver with respect to each alleged statement precisely *when* it was made; the alleged statement about Conestoga providing monthly liquidity to its investors (¶ 121(i)), for example, would be true if made before the alleged "stall[]" in Conestoga's growth that occurred "[s]ometime in 2010," according to Plaintiff's own allegations (¶¶ 21, 24-25). By relying on imprecise allegations, Plaintiff has failed to meet her obligation to put Defendant Carrow "on notice of the precise misconduct with which [he is] charged." *Lum v. Bank of Am.*, 361 F.3d 217, 223-224 (3d Cir. 2016). And she cannot avoid this obligation by arguing that the precise time and place and speaker of each alleged statement are "peculiarly within the defendant's knowledge," as she

9

contends in her brief in opposition to Citrin's motion to dismiss (Dkt. No. 22, Pl.'s Opp. Br. to Citrin's Mot. at 11).  To the contrary, "[these] statements, if they were in fact made, would presumably be at least as well known to [Ms. Bedell] as to Defendants.  There is no basis then to excuse [her] from pleading such statements with particularity."  *Dolan*, 2016 U.S. Dist. LEXIS 161414, at *17-18.

The Amended Complaint's lumping of multiple defendants renders the allegations of Count II insufficient under Rule 12(b)(6) as well.  Plaintiff's assertions that Defendant Heckler and Defendant Carrow made exactly the same statements at some unknown time and place are simply implausible on their face under *Twombly*, 550 U.S. at 570.  As discussed in Section I.B above, Ms. Bedell alleges that she invested in Green Mountain, Topwater, Cassatt, and CV Opportunities based ***solely*** upon the recommendations of Mr. Heckler and/or Ms. Smith; she does not allege that she made these investments based upon any recommendation made by Defendant Carrow.  (Compl. at p. 8 (heading) & ¶¶ 23, 25-34.)  Moreover, none of the alleged illegal conduct by Mr. Heckler and Ms. Smith pertained to Ms. Bedell's investments in Conestoga, the only fund in which Defendant Carrow allegedly played an active role at the time of Plaintiff's investments.  (Compl. ¶¶ 20-22, 24, 35.)  Thus, belied by her own factual averments, Plaintiff's fraud count against Mr. Carrow fails to state a claim of relief that is plausible on its face.  *Twombly*, 550 U.S. at 570.

### III.    CONCLUSION

For the reasons set forth above, Defendant Mark S. Carrow respectfully requests that the Court dismiss the fraud claim asserted against him in Count II of the Amended Complaint.

                                                Respectfully submitted,

                                                 */s/ Jeffery A. Dailey*
                                                Jeffery A. Dailey (No. 85993)
                                                Gay Parks Rainville (No. 53192)
                                                Alfred Anthony Brown (No. 59403)
                                                DAILEY LLP
                                                1650 Market Street
                                                36th Floor
                                                Philadelphia, PA  19103
                                                (215) 367-1640

Dated:  November 30, 2020              Attorneys for Defendant
                                                Mark S. Carrow