IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LINDA BEDELL, THE LINDA BEDELL INDIVIDUAL RETIREMENT ACCOUNT, LANDON BEDELL, KEATON BEDELL, AND INNER DESIGN PROFIT SHARING PLAN,<br>                    Plaintiff,<br><br>            v.<br><br>MARK S CARROW, CASSATT SHORT TERM TRADING FUND, LP, CV SPECIAL OPPORTUNITY FUND, LP, CITRIN COOPERMAN & COMPANY, LLP, TOPWATER INVESTMENT MANAGEMENT, LLCD AND GREEN MOUNTAIN FUND, LLC,<br>                    Defendants. | CIVIL ACTION<br><br><br><br><br>NO.  20-3804 |

## MEMORANDUM OPINION

Plaintiffs allege that they were defrauded by an illicit financial scheme master-minded, *inter alia*, by Defendant Mark Carrow, and one Brenda Smith.[1] Defendant Citrin Cooperman & Company, LLC ("Citrin Cooperman"), a public accounting firm that specializes in audit and tax services, which is alleged to have played a role in the overall scheme and for which Carrow worked, has moved to compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. § 3.

### I.     BACKGROUND

Plaintiffs allege that beginning in 2004 and for about fifteen years thereafter, Defendants convinced and encouraged Bedell and her family to invest in a series of hedge funds ("the Funds") managed, *inter alia*, by Smith and Carrow. While the exact mechanics of the scheme are not at issue here, the allegations are that the Funds were not what they were touted to be.

---

[1] Smith is not a defendant here.

Rather, they were a series of elaborate Ponzi schemes through which Defendants siphoned off Plaintiffs' money all while misleading them about the Funds' nature, health, growth, and operations. Plaintiffs allege that by the time they discovered the fraud in 2019, there was little left to recover: they had lost some $35 million.[2]

Citrin Cooperman entered the picture about six years after Plaintiffs began investing in the Funds when Carrow became the managing partner of its Philadelphia office. On taking the job, Carrow told Bedell (apparently falsely) that he would no longer be directly involved in managing the Funds. Shortly thereafter, he convinced her to retain Citrin Cooperman as her personal accountant and tax adviser.

Each year from 2011 to 2018, Bedell entered into an engagement letter with Citrin Cooperman.[3] The engagement letters uniformly provided that Citrin Cooperman would prepare Bedell's federal, state, and local tax returns, as well as render such accounting and bookkeeping

---

[2] A motion to compel arbitration may be evaluated under either the motion to dismiss standard under Rule 12(b)(6) or the summary judgment standard under Rule 56. *See Guidotti v. Legal Helpers Debt Resolution, LLC*, 716 F.3d 764, 776 (3d Cir. 2013). Where, as here, the party opposing the motion to compel arbitration does not dispute that the parties entered an enforceable agreement to arbitrate, and the complaint and related documents provide sufficient factual basis for deciding the issue, "a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay." *Id.* (internal quotation marks and citation omitted); *see also Singh v. Uber Techs. Inc.*, 939 F.3d 210, 216 (3d Cir. 2019) ("[T]he motion to dismiss standard applies to a motion to compel arbitration where a party's claims are 'subject to an enforceable arbitration clause'—that is, where the *existence* of a valid agreement to arbitrate between the parties is apparent from the face of the complaint or incorporated documents." (quoting *Guidotti*, 716 F.3d at 776)); *Sorathia v. Fidato Partners*, 2020 WL 5121473, at *3 (E.D. Pa. Aug. 31, 2020) (applying the Rule 12(b)(6) standard where defendants attached agreement containing arbitration clause to the motion to compel arbitration, plaintiff did not dispute receiving and signing it, and "the crux of the dispute between the parties center[ed] on the scope and enforceability of that arbitration agreement."). Accordingly, the factual allegations in the Complaint shall be taken as true for the purposes of this motion.

[3] All of the engagement letters were signed by Bedell except for the letter regarding her 2018 tax returns. Nevertheless, the 2018 letter provides that upon Bedell's provision to Citron Cooperman of supporting documentation to prepare her returns, she would be deemed to have agreed to all of the terms set forth above. Bedell did in fact provide Citrin Cooperman with the documentation required to complete her returns and is, absent more, deemed to have agreed to the terms of the engagement letter.

assistance as necessary to prepare her returns. Each of them also included the following catch-all provision:

> You may in the future request services that are not specified in this engagement letter. If this occurs, we may issue a separate engagement letter to confirm the scope and related terms of the additional services. In the absence of any other written communication from us, our services for the [year] tax year will be governed by the terms of this engagement letter.

Over the course of the relationship Plaintiffs allege that Citrin Cooperman's role in Bedell's financial affairs expanded considerably such that she placed her complete trust in it eventually giving Carrow access and control over most of her financial assets and investments resulting in her transferring millions of dollars into the Funds at Citrin Cooperman's behest including through a pension plan which Citrin Cooperman helped her set up.

All of the engagement letters except for the one signed in 2011 include a materially identical arbitration provision which provides that: "Any dispute arising out of or relating to this engagement, or breach thereof, shall first be submitted for good faith mediation administered by the American Arbitration Association ("AAA") and its Rules for Professional Accounting and Related Services Disputes" and, if mediation did not resolve the matter within sixty days, "the parties shall submit the dispute for arbitration" also administered by the AAA.[4]

Starting in or around 2011 Citrin Cooperman also acted as an independent auditor to the Funds. In that capacity, it supplied Bedell with information regarding the purported performance of the Funds, vouching for their value, and convincing Bedell to maintain and increase her investments in them.

---

[4] Although the 2011 engagement letter does not contain the arbitration provision, the Amended Complaint does not allege specific misconduct by Citrin Cooperman taking place in 2011. Accordingly, this distinction does not appear to have import here on this motion to compel arbitration to the claims made against Citrin Cooperman.

Citrin Cooperman motion to compel arbitration invokes the arbitration provisions of the engagement letters.

## II.     LEGAL STANDARD

Under the FAA, when a claim is "referable to arbitration under an agreement in writing for such arbitration," the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3; *see also Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) ("[The FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration."). The FAA "reflects an 'emphatic federal policy in favor of arbitral dispute resolution.'" *KPMG LLP v. Cocchi*, 565 U.S. 18, 21 (2011) (per curiam) (citation omitted). Arbitration provisions must be "rigorously enforce[d]" "according to their terms," *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013), and "any doubts concerning the scope of arbitrable issues [must be resolved] in favor of arbitration," *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). The presumption in favor of arbitration "is particularly applicable where the [arbitration] clause is [] broad. . . ." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986). A motion to compel arbitration "should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005).

Plaintiffs here do not dispute that they entered into valid agreements to arbitrate disputes with Citrin Cooperman. The issue here is whether the claims they have brought fall within the scope of the language of those provisions. *Medtronic AVE, Inc. v. Advanced Cardiovascular Sys., Inc.*, 247 F.3d 44, 54–55 (3d Cir. 2001). Whether a dispute falls within the scope of an

arbitration provision depends on the relationship between the breadth of the arbitration provision and the nature of the claim. *CardioNet, Inc. v. Cigna Health Corp*., 751 F.3d 165, 173 (3d Cir. 2014).

### III.    DISCUSSION

Arbitration provisions like the ones at issue here which contain the phrase "arising out of" are construed broadly. *See Griswold v. Coventry First LLC*, 762 F.3d 264, 271 n.5 (3d Cir. 2014); *see also Battaglia v. McKendry*, 233 F.3d 720, 727 (3d Cir. 2000) ("[W]hen phrases such as . . . 'arising out of' appear in arbitration provisions, they are normally given broad construction."). The cases Plaintiffs cite in urging a narrow reading of the provisions are distinguishable in that they expressly limit arbitration to certain categories of claims. *See, e.g. Local 827, Int'l Bhd. of Elec. Workers v. Verizon New Jersey, Inc.,* 458 F. 3d 305, 311 (3d Cir. 2006) (declining to order arbitration where the agreement enumerated five specific issues to be arbitrated, rather than referring any disputes to arbitration); *Trap Rock Indus. v. Local 825, Int'l Union of Op. Eng'rs*, 982 F.2d 884, 885 (3d Cir. 1992) (declining to order arbitration of an employment discharge dispute where the arbitration provision was expressly limited to three categories of layoffs and unambiguously stated that discharge for the behavior at issue was "not subject to arbitration"). Here, the provision refers to arbitration of *any* dispute arising from *or related to* the engagement, without exception. Such a broad and inclusive provision must be given its full effect.

Because the arbitration provisions cover any dispute "arising out of or relating to ***this engagement***," (emphasis added) the parties also dispute what the phrase "this engagement" encompasses. Again, the Plaintiffs offer a narrow reading limiting the scope of the engagement to Citrin Cooperman preparing Bedell's annual tax returns. However, Citrin Cooperman not

only provided comprehensive tax preparation services (including "accounting and bookkeeping" as necessary) pursuant to the engagement letters, but also counseled Bedell about the tax implications of proposed investments in advance of those investments being made, helped her set up pension plans, and advised her to invest those plans' monies in the Funds. The scope of Citrin Cooperman's engagement was plainly not limited to the preparation of Bedell's annual tax returns. Rather, the catch all clause of the engagement letters was triggered by Citrin Cooperman's add-on services and the provision of those services was governed by the terms of the engagement letters—including the arbitration provisions.[5]

The claims Plaintiffs make against Citrin Cooperman—aiding and abetting fraud, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and negligent misrepresentation—must be arbitrated. They each share factual underpinnings that stem from Citrin Cooperman's conflicting roles as independent auditor to the Funds and as Bedell's financial advisor centered around advice to Bedell to invest in the Funds. *CardioNet*, 751 F.3d at 173 (citing *Medtronic*, 247 F.3d at 55) (focusing on the "factual underpinnings of the claim rather than the legal theory alleged in the complaint."). In short, the claims are premised on allegations that Citrin Cooperman leveraged its role as the Funds' independent auditor to provide Bedell a steady stream of misinformation about the financial strength and efficacy of the Funds, thereby inducing her investments. Claims that stem from Citrin Cooperman's conduct as the independent auditor are therefore related—indeed inextricably intertwined—with its role as Bedell's financial adviser and tax preparer, and thus covered by the broad arbitration provision.

---

[5] Plaintiffs' attempt to invert these provisions, arguing that the engagement letters *exclude* additional services beyond the preparation of Bedell's annual tax returns. Not so. The language of the letters clearly states that Citrin Cooperman *may* (not must) issue a separate engagement letter for additional services, and that in absence of such written documentation, any additional services are *included* and subject to the letter's terms.

For the reasons set forth above, Citrin Cooperman's Motion to Compel Arbitration will be granted and this action will be stayed pending arbitration.

An appropriate order follows.

**January 22, 2021**                                     **BY THE COURT:**

                                                    **/s/Wendy Beetlestone, J.**

                                                    **_____**
                                                    **WENDY BEETLESTONE, J.**